# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

| | |
|---|---|
| JOHN DOES 1, 2, 4, 5, 6, & 8; MICHAEL ROBINSON; and MAURICE COLLINS | PLAINTIFFS |
| v.  No. 3:23-cv-230-DPM | |
| EMMETT PRESLEY, et al. | DEFENDANTS |
| JOHN DOES 9-12 &14-16; and NATHAN HARMON | PLAINTIFFS |
| v.  No. 3:24-cv-3-DPM | |
| EMMETT PRESLEY, et al. | DEFENDANTS |
| JOHN DOES 19-24 & 29-30 | PLAINTIFFS |
| v.  No. 3:24-cv-12-DPM | |
| EMMETT PRESLEY, et al. | DEFENDANTS |
| JOHN DOES 103, 105, 107 – 113, 120-123; and JANE DOES 103, 109, 120, & 121 | PLAINTIFFS |
| v.  No. 3:25-cv-197-DPM | |
| EMMETT PRESLEY, *et al.* | DEFENDANTS |

## SEPARATE DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS ALL CLAIMS

Separate Defendants Theodore E. Suhl, Individually and d/b/a Maxus, Inc. d/b/a Arkansas Counseling Associates Incorporated d/b/a Trinity Behavioral Healthcare Systems, Inc. d/b/a The Lord's Ranch; Maxus, Inc. Individually and d/b/a The Lord's Ranch; Trinity Behavioral Health Care System, Incorporated, Individually and d/b/a The Lord's Ranch; The Lord's Ranch Christian Boy's Home, Inc.; The Lord's Ranch Christian Center And Children's Rehabilitation Unit; The

Lord's Ranch Psychiatric Unit, Inc.; Christian International Medical Sciences Foundation, Inc.; Cornerstone Treatment Center, Inc.; Burklyn Corporation; Good Samaritan Rehabilitation Center, Inc.; Warm Springs Christian Center, Inc.; Trinity Dynamics, Incorporated; The Lord's Ranch Behavioral Healthcare System, Incorporated; Triennia Health Care, Inc.; Horizon Sunrise Management; Millenia Health Care, Inc.; LG Property Management, Incorporated; Green Valley Asset Management, LLC; Rolling Hills Investments, LLC; Regal Property Developments, LLC; and Shirley Suhl (collectively, "Separate Defendants"), by and through their undersigned counsel, respectfully request that the Court dismiss all claims against them, and in support of their Motion to Dismiss Plaintiffs' New Complaint (No. 3:25-cv-197-DPM) state as follows:[1]

## INTRODUCTION

Plaintiffs' New Complaint has added seventeen (17) additional Plaintiffs to the pending Consolidated Complaint. The New Complaint brought back seven (7) out of eight (8) Plaintiffs dismissed from a prior case in the Consolidated Complaint.[2] It also brought back four (4) out of fourteen (14) Plaintiffs dismissed from another case in the Consolidated Complaint.[3] It further includes six (6) new Plaintiffs.[4]

Separate Defendants agree with the Court's wisdom permitting them to incorporate pending briefs and arguments in order to promote efficiency. *See* [Doc. 151]. Separate Defendants assert and incorporate their pending Motion to Dismiss and Brief in Support, including all legal authority and argument. *See* [Docs. 133 & 134].

---

[1] This Motion is brought on behalf of all Defendants except for individual Defendants Emmet A. Pressley and Alonza Jiles, who are represented by separate counsel.

[2] Case No. 3:24-cv-13-DPM (JD 108 – 113) and Jane Doe 109.

[3] Case No. 3:24-cv-14-DPM (JD 103, 105, & 107) and Jane Doe 103

[4] John Does 120-123 & Jane Does 120-121.

Plaintiffs' claims fail for several reasons that are explained in detail in the prior Motion to Dismiss and Brief in Support. *See* [Docs. 133 & 134]. To briefly reiterate - the passage of the Arkansas Justice for Vulnerable Victims Act repealed the Delayed Discovery Act by implication. The Vulnerable Victim Act wholly covers the limitations period for civil actions based on childhood sexual abuse and is in direct and irreconcilable conflict with the Delayed Discovery Act. In addition, and alternatively, the Delayed Discovery Act is unconstitutionally vague as applied to these defendants here under the facts and circumstances of this case.[5] Pursuant to the express language of the Delayed Discovery Act, it does not apply to Plaintiffs' claims because they all were aware of the alleged abuse when they were still minors. Furthermore, the factual allegations in Plaintiffs' Complaint show that their claims would be barred even if the tolling provision in the Delayed Discovery Act was applied to the facts of this face.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In applying this standard, the Court accepts all well-

---

[5] Pursuant to Fed. R. Civ. P. 5.1, Defendants are filing a notice of constitutional question to the Arkansas Attorney General's Office.

pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## ARGUMENT

### I. John Doe 120 is Untimely Under any Limitation Period Including the Delayed Discovery Act.

John Doe 120 was born ▮▮▮▮▮▮▮▮▮. *See* Ex. 1. As such, he turned eighteen (18) years old on ▮▮▮▮▮▮▮▮. After that date the Plaintiff reached the age of majority, and any allegations of sexual abuse would not sustain a claim under any Arkansas statute that applies to minors. See Ark. Code Ann. § 16-56-130 ("sexual abuse which occurred when the injured person was a *minor*…").

Plaintiffs' Complaint leaves open the possibility that the allegations of abuse could have occurred earlier in 1989, when the Plaintiff was still a minor. Specifically, John Doe 120 alleges that he was "a resident at the Lord's Ranch from approximately 1989 to 1992." [Doc. 1 at ¶ 189]. Presuming John Doe was allegedly abused the day before his 18th birthday, he would still have three years to bring his claim after reaching full age or until his 21st birthday. *See* Ark. Code § 9-25-101 ("full age is eighteen"); Ark. Code § 16-56-116; *see also Linder By and Through Linder v. Howard*, 296 Ark. 414, 757 S.W.2d 549 (1988) (providing minor tolling until 21 years of age).

John Doe 120 turned twenty-one on ▮▮▮▮▮▮▮▮. *See* Ex. 1. At this point any claims of alleged abuse that he suffered as a minor would have expired when he turned twenty-one. Critically, John Doe 120 reached the age of majority prior to the enactment of the Delayed Discovery Act on August 13, 1993. As such, the Delayed Discovery Act is inapplicable to John Doe 120's claims. *Barre v. Hoffman*, 2009 Ark. 373, 326 S.W.3d 415, 418 (2009); *see also Miller v. Subiaco Acad.*, 386 F. Supp. 2d 1025, 1028 (W.D. Ark. 2005). John Doe 120 should be dismissed as a matter of law.

4

## II. The Delayed Discovery Act is Not Applicable to Plaintiffs' Claims.

### A. The Delayed Discovery Act Does Not Apply to the Claims of These Plaintiffs.

Defendants adopt and incorporate the argument from its prior Brief in Support. [Doc. 133 & 134]. Defendants only point out that Plaintiffs' new Complaint confirms that Plaintiffs were aware they were allegedly sexually abused while still minors. ([Doc. 1], ¶¶ 81-97 & 178-194).

### B. Plaintiffs' Claims Are Still Barred Under the Act's Discovery Rule.

Defendant adopts and incorporates the argument from its prior Brief in Support. [Doc. 133 & 134]. Plaintiffs' new Complaint makes clear that all Plaintiffs were aware of the sexual abuse at the time it occurred. ([Doc. 11], ¶¶ 81-97 & 178-194). However, Plaintiffs were more than just aware of the abuse and the factual allegations in Plaintiffs' new Complaint provide evidence they had already discovered its effects.

Seven (7) of the Plaintiffs claimed to have reported the alleged abuse to individuals, staff, and doctors. ([Doc. 1], ¶ 180 (JD 107"reported abuse to staff members"); ¶ 181 ( JD108 "reported the abuse he suffered at the hands of other residents to staff members"); ¶ 183 (JD 110 alleging "other employees saw this sexual abuse take place or had it reported to them but took no action"); ¶ 185) (JD 112 "reported abuse to Shirley Suhl on multiple occasions to no avail"); ¶ 186 ( JD 113"reported the assault [by another resident] to staff members"); ¶ 187 (JaD 103"reported the sexual abuse to a staff member named Mr. Jackson"); ¶ 188 (JaD 109 "trauma was reported to a Doctor at the Lord's Ranch"). Seven additional Plaintiffs not only claim to know of the alleged abuse, but assert they took affirmative steps to report it. Pursuant to the same arguments articulated in their prior briefing, Defendants request dismissal of Plaintiffs' claims. [Doc. 133 & 134].

## III. The Delayed Discovery Act Does Not Apply to Non-Perpetrator Defendants.

### A. The Delayed Discovery Act Does Not Apply to Non-Perpetrator Defendants Based on Principles of Statutory Interpretation.

The Arkansas Delayed Discovery Act does not apply to claims against non-perpetrator Defendants for the reasons articulated in Defendants prior briefing. [Doc. 133 & 134].

### B. Plaintiffs' Vicarious Liability Claims Fail as a Matter of Law and Must be Dismissed.

The doctrine of *respondeat superior* permits an employer to "be held vicariously liable for the tortious conduct of an employee or agent if the evidence shows that such conduct was committed within the scope of the agent's employment." *Cooper Clinic, P.A. v. Barnes*, 237 S.W.3d 87 (Ark. 2006) (emphasis added). "The test for whether an employee is acting within the scope of his employment is whether the individual is carrying out the 'object and purpose of the enterprise,' as opposed to acting exclusively in his own interest." *Id*. at 92-93. To be within the scope of employment, the conduct must (1) be of the kind the employee is employed to perform; (2) occur substantially within the authorized time and space limits; and (3) be actuated, at least in part, by a purpose to serve the master. *See Regions Bank & Trust, N.A. v. Stone Cty. Skilled Nursing Facility, Inc.*, 38 S.W.3d 916, 919 (Ark. App. 2011).

Importantly, acts of sexual abuse are not within the scope of employment as a matter of law. *See Porter v. Harshfield*, 948 S.W.2d 83 (Ark. 1997); *Regions Bank*, 38 S.W.3d at 919; *see also Gibson v. Brewer*, 952 S.W.2d 239, 245-46 (Mo. 1997); *Gilley v. Missouri Pub. Entity Risk Mgmt. Fund*, 437 S.W.3d 315, 319-20 (Mo. App. 2014); *P.S. v. Psychiatric Coverage, Ltd.*, 887 S.W.2d 622, 625 (Mo. App. 1994); *Tockstein v. P. J. Hamill Transfer Co.*, 291 S.W.2d 624, 628 (Mo. App. 1956). The allegations in the Complaint are based on intentional criminal conduct of

sexual abuse, fall exclusively within any agent's own interest, and are not within the scope of employment. As such, Plaintiffs' claim for vicarious liability should be dismissed.

### C. Plaintiffs Claims Against Shirley Suhl and Ted Suhl Fail to State Sufficient Cause of Action Against Them Personally and Should be Dismissed.

It is undisputed that allegations of sexual abuse or sexual impropriety are extremely sensitive. Consolidated for purposes of discovery, these are individual Plaintiffs making individual claims about the abuse they allegedly suffered.

#### 1. Forty Plaintiffs Fail to Make any Allegations Directly Against Shirely Suhl

There are no allegations of sexual abuse or sexual misconduct committed by Shirley Suhl in either the new Complaint or the previous Third Amended Complaint. ([Doc. 1], ¶¶ 81-97; ¶¶ 178-194); ([Doc. 126], ¶¶ 109-130 & 134-135; ¶¶ 238 -324 & 335-337) (observing that Shirey Suhl is not accused by any individual Plaintiff of sexual abuse). In fact, only one Plaintiff references Shirley Suhl in their personal factual allegations and only to allege that they reported the abuse after it had already occurred.

The only specific factual allegation against Shirley Suhl, personal to any Plaintiff in either the Third Amended Complaint or the new Complaint is the allegation by John Doe 112 that he allegedly "reported abuse to Shirley Suhl on multiple occasions to no avail." [Doc. 1], ¶ 185. The remaining sixteen (16) Plaintiffs do not, in their personal factual allegations, assert a single charge against Shirley Suhl. ([Doc. 1], ¶¶ 81-89 & 91-97; ¶¶ 178-184 & 186-194) (observing that Shirey Suhl is not mentioned by any remaining Plaintiff while alleging facts to describe their personal experience). Similarly, there are no factual allegations of abuse or reporting abuse made against Shirley Suhl by individual Plaintiffs in the Third Amended Consolidated Complaint. *See* [Docs.

133 & 134]. Aside from John Doe 112, none of the forty (40) other Plaintiffs alleged they ever met, saw, interacted with, or even spoke to Shirley Suhl.

Separate Defendants Shirley Suhl should be dismissed because Plaintiffs' New Complaint fails to state facts that support a cognizable claim against her personally. There are no allegations of sexual abuse by any Plaintiff against Shirley Suhl in the New Complaint or the Third Amended Consolidated Complaint. Only one Plaintiff alleges they reported any abuse. At a minimum, the remaining forty (40) Plaintiffs fail to state facts sufficient to sustain a claim against Shirely Suhl personally.

### 2. Thirty-Five Plaintiffs Fail to Make any Allegations Directly Against Ted Suhl

In the new Complaint, an allegation of sexual abuse is made, for the first time, against Ted Suhl individually. Jane Doe 120 alleges she was sexually abused by Ted Suhl along with his father, Bud Suhl, Emmett Presley, and Alonza Jiles sometime between 1993-1996. ([Doc. 1], ¶ 193). Notably, there were no allegations of sexual abuse or sexual misconduct against Ted Suhl by any Plaintiff in the Third Amended Complaint. ([Doc. 126], ¶¶ 109-130 & 134-135; ¶¶ 238 - 324 & 335-337) (observing that Ted Suhl is not accused by any individual Plaintiff of sexual abuse). While Defendants deny Jane Doe 120's allegation, they acknowledge she has pled a proper cause of action at the Motion to Dismiss stage.

However, the remaining Forty (40) Plaintiffs have failed to make any direct claims of sexual abuse or sexual misconduct against Ted Suhl personally. As such, they should be dismissed for failing to allege any specific facts related to direct abuse by Mr. Suhl. Outside of Jane Doe 120, the remaining sixteen (16) Plaintiffs in the new Complaint do not allege any specific factual allegations against Ted Suhl. ([Doc. 1], ¶¶ 81-97; ¶¶ 178-194) (no remaining Plaintiffs reported any alleged abuse or otherwise interacted with Mr. Suhl). Similarly, nineteen (19) Plaintiffs do

8

not reference Ted Suhl in their personal allegations contained in the Third Amended Complaint.[6] *See generally*. ([Doc. 126], ¶¶ 109-130 & 134-135; ¶¶ 238 -324 & 335-337 (finding no allegations involving Ted Suhl made by John Does 1, 3, 5-12, 14, 16, 19-20, & 22-24). Those Thirty-Five Plaintiffs do not claim they met, saw, spoke to, or interacted with Ted Suhl. Their failure to allege any facts regarding his personal involvement with any alleged sexual abuse or even reports of sexual abuse requires dismissal of their claims against Ted Suhl.

Only five (5) Plaintiffs in the Third Amended Complaint mention Ted Suhl and only to claim they reported the alleged sexual abuse to him after it had already occurred. ([Doc. 126], ¶ 241 (John Doe 2 claiming to having reported the alleged abuse to Ted Suhl); *Id.* ¶ 248 (John Doe 4 claiming to have reported the alleged assault to Ted Suhl); *Id.* ¶ 301 (Nathan Harmon claiming to have reported the alleged abuse to Ted Suhl); *Id.* ¶ 305 (John Doe 15 claiming to have reported the alleged abuse to Ted Suhl); *Id.* ¶ 316 (John Doe 21 claiming to have reported the alleged abuse to Ted Suhl).

In sum, Jane Doe 120 is the only Plaintiff to assert any allegation of sexual abuse against Ted Shul. Five (5) additional Plaintiffs assert they reported the abuse to Ted Suhl after it had occurred. At a minimum, the remaining thirty-five (35) Plaintiffs fail to state any facts sufficient to sustain a claim against Ted Suhl personally.

### 3. Corporate Officer Liability and Collective Pleading

In determining whether a colorable cause of action exists in tort against an individual employed by a corporation is an issue of Arkansas law. The Arkansas Supreme Court has concluded that "[w]hen it can be shown that an individual employed by a corporation is *personally*

---

[6] John Doe 1, Michael Robinson, 5,6, Maurice Collins, 8-12, 14, 16, 19-20, & 22-24 make no direct allegations against Ted Suhl. *See generally*. ([Doc. 126], ¶¶ 109-130 & 134-135; ¶¶ 238 -324 & 335-337.

*involved* in the events surrounding an injury, the individual may be sued." *McGraw v. Weeks,* 326 Ark. 285, 294 (1996) (emphasis added). However, when there is no evidence that an employee is "*directly involved* in the events surrounding the injury or that he was acting in any capacity other than as a corporate officer when the accident occurred ... there is nothing on which to premise individual liability...." *Cash v. Carter*, 312 Ark. 41, 47 (1993) (emphasis added). Plaintiffs fail to make any specific factual allegations, beyond conclusory statements, that the Suhl Defendants were personally involved with the alleged sexual abuse.[7]

Plaintiffs' allegations are premised on a theory of corporate-officer liability. Plaintiffs' Third Amended Complain against the Suhl Defendants is predicated simply on their position and affiliation with certain corporate entities. Compl., ¶ 61 (Shirley Suhl was an owner and senior Director of TLRE and the Ranch); *Id*., ¶ 282 ("Shirley Suhl was listed as an officer or registered agent for three of the Lord's Ranch Defendants"); *Id*. ¶ 58 (Ted Suhl was an owner and senior director of TLRE and the Ranch); *Id*.¶ 280 ("Ted Suhl has been listed as an officer or registered agent for nine of the Lord's Ranch Defendants").

In an effort to obscure the legal distinction between the Suhl Defendants and the various corporate entities, Plaintiffs have attempted to improperly group them together in the pleadings. Compl., ¶ 272 (asserting all corporate entities and their owners, including but not limited to Ted Suhl and Shirly Suhl, hereinafter referred to as "**Lord's Ranch Corporate Defendants**," acted as one business); *Id*. at ¶ 298 (claiming that all corporate entities and their owners, including Suhl Defendants, were mere alter-egos of one another); *Id*. at ¶ 72 (asserting all entities and individuals

---

[7] Jane Doe 120 is not included in this argument as she made a direct claim for sexual abuse in the new Complaint.

are "**The Lord's Ranch Defendants**").[8]

Despite Plaintiffs' assertions, Ted and Shirley Suhl are individuals who are separate and distinct from the Defendant entities. As such, the Plaintiffs cannot hold Shirley and Ted Suhl personally liable for the alleged negligence of a corporation based solely on their position as an officer or administrator. *See, e.g.*, *Hunt v. Rabon*, 272 S.E.2d 643, 644 (S.C. 1980) ("A director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character.") (quotation omitted). Because "a corporate officer will not be held personally liable for the acts of the corporation by mere virtue of his status as a corporate officer . . . . a complaint against a corporate officer must allege facts or circumstances which compel departure from the common-law rule against corporate-officer liability for the corporation's acts in order to survive a . . . motion to dismiss." *State ex rel. Fisher v. Am. Courts, Inc.*, 644 N.E.2d 1112, 1114 (1994).

In determining whether a colorable cause of action exists in tort against an individual employed by a corporation is an issue of Arkansas law. The Arkansas Supreme Court has concluded that "[w]hen it can be shown that an individual employed by a corporation is *personally involved* in the events surrounding an injury, the individual may be sued." *McGraw v. Weeks,* 326 Ark. 285, 294 (1996) (emphasis added). However, when there is no evidence that an employee is "*directly involved* in the events surrounding the injury or that he was acting in any capacity other than as a corporate officer when the accident occurred ... there is nothing on which to premise individual liability...." *Cash v. Carter*, 312 Ark. 41, 47 (1993) (emphasis added). Outside of Jane Doe 120, Plaintiffs fail to make any specific factual allegations that the Suhl Defendants were personally involved with the alleged sexual abuse.

---

[8] While it is understandable to refer to all named Defendants as "The Lord's Ranch Defendants," it becomes problematic when Plaintiffs continue to use that term in bringing every cause of action blurring the lines between direct claims of negligence against entities or individuals with vicarious liability and other claims.

Plaintiffs fail to make any "factual allegations" against the Suhl Defendants personally and, instead, rely on generalized allegations that Ted and Shirley Suhl "directed, governed, or controlled" the Lord's Ranch Business operations. [Doc. 1]., ¶ 279. This is completely contradicted by other allegations in the Third Amended Complaint[9] but, even if we assume their true, it still does not impose personal liability on the Suhl Defendants. *Baird v. Floyd* 2009 Ark. 455, 344 S.W.3d 80 (finding that allegations [Defendant CEO] controlled the operation, planning, management, and quality control of nursing facility did not speak to facts of his personal involvement with the operations at the specific facility or in [Plaintiff's] care). The Suhl Defendants, as officers, alleged to be "directing, governing, or controlling" the business operations fails to allege any personal involvement by the Suhl Defendants with the alleged injury – the act of sexual abuse.

Plaintiffs' Third Amended Complaint continues to make generalized and conclusory allegations of the alleged involvement of the Suhl Defendants. [Doc. 1], ¶ 111 (Bud Suhl, Ted Suhl, and Shirley Suhl presided over this systematic child abuse); *Id*. ¶ 112 (The causes of action asserted in this lawsuit are for child sexual abuse…which would not have been possible absent the approval, tacit or otherwise, of the Suhl family, whose active participation in covering up child sexual abuse); ¶ 117 (The Lord's Ranch leadership…were fully aware that minors were being sexually abused); ¶ 118 (The Lords Ranch leadership…were fully aware of Emmett Presley's abuse); ¶ 307 (Ted Suhl an Shirley Suhl failed to prevent further abuse by Presley but made the

---

[9] This "factual" assertion is directly contradicted by other allegations in the Complaint. [Doc.1]., ¶ 27 (asserting Bud Suhl founded the Lord's Ranch); ¶ 59 (asserting Bud Suhl served as the Executive Director of the Lord' Ranch); ¶ 133 (acknowledging that twenty years later the Lord's Ranch is still operated under the directorship of Bud Suhl); *see also Id*. ¶ 280 (acknowledging that Ted Suhl served as an officer or *registered agent* for only nine entities); ¶ 282 (acknowledging that Shirley Suhl served as an officer or *registered agent* for only three entities).

calculated decision to allow sexually abusive staff to continue sexually abusing children – achieved through threats, intimidation, and violence).

Plaintiffs' gratuitous, exaggerated, and conclusory rhetoric that the Suhl Defendants "knew" of the sexual abuse and/or actively participated is simply not supported by any additional factual allegations. Those are mere legal conclusions entitled to no weight on this Motion to Dismiss.[10] *See, e.g., Jaffe v. Empirian Property Mgmt., Inc.*, No. 1 CA–CV 10–0850, 2012 WL 723194, at *10 (Ariz. Ct. App. Mar. 6, 2012) (sustaining demurrer for corporate officer where "complaint d[id] not allege specific acts of wrongdoing" or "any personal participation in any [of the corporation's] tortuous [sic] wrongdoing"). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Courts therefore routinely dismiss claims of corporate-officer liability where plaintiffs do not sufficiently allege that the corporate officer actively participated in the corporation's alleged tortious conduct. *See, e.g., DTC Energy Group, Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1177 (D. Colo. 2019) (granting motion to dismiss where allegations that corporate officers "knew [the corporation] would attempt to compete for [plaintiff's] business" and were "physically present" at meetings were insufficient to show that the corporate officers were "involve[d] in the alleged theft of trade secrets"); *Jenkins v. Meta Platforms, Inc.*, No. 3:22-CV-72, 2023 WL 4306908, at *8 (M.D. Ga. June 30, 2023) (granting motion to dismiss where plaintiffs "failed to sufficiently allege [the corporate officer's] personal involvement" in the corporation's wrongful activities); *Cargo*

---

[10] To the extent Plaintiffs' allegations about "covering up" sex abuse, hiding the abuse, or failing to prevent the abuse allege any type of fraud. Such conclusory allegations fail to satisfy Rule 9(b)'s particularity requirement. *See Vess*, 317 F.3d at 1103 ("Rule 9(b) require[s] that the **circumstances** of the fraud be stated with particularity") (emphasis added).

*Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, 557 F. Supp. 3d 381, 396-98 (E.D.N.Y. 2021) (granting motion to dismiss because allegations regarding corporate officer's "position at [the corporation] and his inclusion on [an] email" about the wrongful conduct did not sufficiently show his "participat[ion] in the commission of" the alleged fraud); *Tatten v. Bank of Am. Corp.*, 912 F. Supp. 2d 1032, 1039 (D. Colo. 2012) (granting motion to dismiss where allegations against CEO were "insufficient to show his personal participation in the alleged torts"); *Hunt*, 272 S.E.2d at 644 (granting motion to dismiss where allegations did not show board members "participated in or directed the tortious act" of the corporation).

The Suhl Defendants purported "knowledge" of the abuse and "calculated decision" to allow it are generalized allegations and do not allege any specific facts of wrongdoing. A blanket allegation that they were aware of the problem is simply not sufficient to impose personal liability. *Bayird v. Floyd*, 2009 Ark. 455, 9–10, 344 S.W.3d 80, 86 (2009) (allegations injuries [Defendant] was "aware of problems" at the facility, did not commit adequate resources to address them, and that the injuries were a result of his "corporate philosophy" did not result in officer personal liability).

The allegations, even if accepted as true, only evidence some knowledge that he "knew" that a tort already occurred. *Loeffler*, 539 A.2d at 878; *see also DTC Energy Group*, 420 F. Supp. 3d at 1177 (allegations that corporate officers "knew" of efforts to compete against plaintiff did not establish their active involvement "in the alleged theft of trade secrets") *Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, 557 F. Supp. 3d 381, 396-98 (E.D.N.Y. 2021) (granting motion to dismiss because allegations regarding corporate officer's "position at [the corporation] and his inclusion on [an] email" about the wrongful conduct did not sufficiently show his "participat[ion] in the commission of" the alleged fraud).

14

The allegations in the Plaintiffs' Complaint do not state sufficient facts to state a claim for personal liability against the Suhl Defendants.[11] There are no legitimate factual allegations of conscious wrongdoing or affirmative conduct to support a theory of corporate officer liability. Plaintiff instead relies on conclusory allegations of presiding over systematic abuse. As such, the claims for personal liability against Ted and Shirley Suhl should be dismissed.

IV. **Plaintiffs' Improper "Collective Pleading" Requires Dismissal of All Counts Against Eighteen of the Corporate Defendants.**

Defendants adopt and incorporate the argument from its prior Brief in Support. [Doc. 133 & 134]. Defendants would point out that the same "collective pleading" goes beyond just the corporate Defendants, and the arguments are equally applicable to the collective pleading made against the separate individual Defendants.

## CONCLUSION

For the foregoing reasons, Separate Defendants respectfully request that the Court dismiss all claims against them and grant such further relief as is just and equitable.

---

[11] Notably, there are no factual allegations that the Suhl Defendants are doctors, medically licensed, or otherwise even responsible for patient care in order to sustain a claim for "negligent patient care." There are no specific factual allegations of the Suhl Defendants actual role, if any, with the separate entities to support claims for "negligent supervision" or "negligent retention." *See*, Compl., ¶ 447. There are no specific factual allegations against the Suhl Defendants of any specific crime that would support a claim for "civil active by a crime victim."

Respectfully submitted,

**ROETZEL & ANDRESS, LPA**
30 N. LaSalle Street, Suite 2800
Chicago, IL 60602
Phone: 312.580.1200
mscotti@ralaw.com

By: /s/ Michael J. Scotti
Michael J. Scotti, III
*Pro Hac Vice*

- AND -

**MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.**
4206 South J.B. Hunt Drive, Suite 200
Rogers, Arkansas 72758
Direct: (479) 464-5670
Facsimile: (479) 464-5680
smiller@mwlaw.com
jalexander@mwlaw.com

By: Stuart Miller
Stuart P. Miller, Ark. Bar No. 88137
John E. Alexander, Ark. Bar No. 2015248

*Attorneys for Separate Defendants*