**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| JOHN DOES 1, 4, 6;<br>MICHAEL ROBINSON; and<br>MAURICE COLLINS | | **PLAINTIFFS** |
| **v.** | **No. 3:23-cv-230-DPM** | |
| EMMETT PRESLEY, et al. | | **DEFENDANTS** |
| JOHN DOES 10, 15, and 16 | | **PLAINTIFFS** |
| **v.** | **No. 3:24-cv-3-DPM** | |
| EMMETT PRESLEY, et al. | | **DEFENDANTS** |
| JOHN DOES 19, 23, and 29 | | **PLAINTIFFS** |
| **v.** | **No. 3:24-cv-12-DPM** | |
| EMMETT PRESLEY, et al. | | **DEFENDANTS** |
| JOHN DOES 110, 111, 121, 123; and<br>JANE DOE 109 | | **PLAINTIFFS** |
| **v.** | **No. 3:25-cv-197-DPM** | |
| EMMETT PRESLEY, et al. | | **DEFENDANTS** |

**JOINT REPORT OF DISCOVERY DISPUTE**

COME Plaintiffs and Defendants Shirley Suhl and Ted Suhl, along with corporate Defendants Lord's Ranch Christian Boy's Home Inc., Lord's Ranch Behavioral Healthcare System Incorporated, Trinity Behavioral Health, Maxus Inc., Lord's Ranch Christian Center and Children's Rehabilitation Unit, Lord's Ranch Psychiatric Unit Inc., Christian International Medical Sciences Foundation, Inc., Cornerstone Treatment Center Inc., Burklyn Corporation, Good Samaritan Rehabilitation Center Inc., Warm Springs

1

Christian Center Inc., Trinity Dynamics Incorporated, Horizon Sunrise Management, Millenia Health Care Inc., LG Property Management Incorporated, Green Valley Asset Management LLC, Rolling Hills Investments LLC, Regal Property Development LLC, and Triennia Health Care, Inc. (collectively "Parties"), by and through their respective counsel, and, submit this *Joint Report of Discovery Dispute* in compliance with the Court's Order dated July 14, 2025 (Dkt. 142 at pp. 3-4).

1.      Plaintiffs served written discovery on Shirley Suhl and Ted Suhl. Each objected to discovery regarding his or her financial condition on the grounds that: (a) Plaintiffs must first make a prima facie showing of entitlement to punitive damages before obtaining financial discovery; (b) Plaintiffs waived the right to prove any one defendant's financial condition by seeking punitive damages against multiple defendants; and (c) the requests seek personal and private information, are overbroad, irrelevant, and not proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1). *See* Ex. 1 at Resp. No. 9; Ex. 2 at Resp. Nos. 16–21, 32–40; Ex. 3 at Resp. No. 9; Ex. 4 at Resp. Nos. 16–21, 32–40.

2.      Plaintiffs also served written discovery on the corporate Defendants. Those Defendants similarly objected to discovery concerning their financial condition on the grounds: (a) Plaintiffs must first make a prima facie showing of entitlement to punitive damages; (b) Plaintiffs waived the right to prove any one defendant's financial condition by seeking punitive damages against multiple defendants; (c) the discovery is overbroad, irrelevant, and not proportional under Rule 26(b)(1); (d) the discovery is unduly burdensome as to entities that have been dissolved or forfeited; (e) certain entities are

2

allegedly unrelated to the Lord's Ranch or did not conduct business operations; and/or (f) certain Defendants contend they are charitably immune. *See* Ex. 5 at Resp. No. 16; Ex. 6 at Resp. Nos. 1–6; Ex. 7 at Resp. No. 16; Ex. 8 at Resp. Nos. 1–6; Ex. 9 at Resp. No. 16; Ex. 10 at Resp. Nos. 1–6; Exs. 11–26 at Resp. No. 16.

3.    This is the primary disagreement before the Court: whether Plaintiffs may obtain discovery related to each Suhl defendant's and each corporate defendant's financial condition, i.e., the Lord's Ranch's financial condition.

4.    The second disagreement concerns Shirley Suhl and Ted Suhl's responses to Plaintiffs' Request for Production Nos. 16 and 17. Plaintiffs contend that Shirley Suhl and Ted Suhl have waived their objections by responding, "[s]ubject to and without waiving these objections," claiming not to possess the documents, but agreeing to supplement if responsive documents are later discovered. *See* Ex. 2 at Resp. Nos. 16 & 17; Ex. 4 at Resp. Nos. 16 & 17.

5.    Counsel for the parties conferred in good faith regarding these issues through multiple emails, Zoom conferences, phone calls, and in-person discussions between March 25, 2026 and May 29, 2026. Despite those efforts, the parties have been unable to resolve the dispute without Court intervention.

6.    Accordingly, the parties submit this Joint Report pursuant to the Court's Order July 14, 2025 Order and request that the Court resolve the parties' dispute concerning the discoverability of Defendants' financial condition and the related waiver issue.

**Plaintiffs' Position**

Plaintiffs' position begins with the allegations in the Third Amended Complaint ("TAC"), ECF No. 126. Plaintiffs allege The Lord's Ranch Defendants, including Shirley Suhl and Ted Suhl, knew that Plaintiffs, while children at The Lord's Ranch, were being sexually abused by Emmett Presley, knew their failure to act would result in continued abuse, and nevertheless consciously chose not to protect them. TAC ¶¶ 158–180. Plaintiffs further allege that Defendants threatened, intimidated, restrained, and punished Plaintiffs when they reported abuse or attempted to leave, and that Defendants allowed a known abuser to continue having access to Plaintiffs while they were in their care.

Plaintiffs' allegations have been bolstered through discovery. Shirley Suhl, for instance, admitted in her deposition that she and The Lord's Ranch knew Presley was driving children around in his personal vehicle. (S. Suhl Dep. 242:12–15, Ex. 27). John Doe 4 testified that he reported sexual abuse by Presley occurring in Presley's car to senior personnel in 1996 or 1997, including Alonzo Jiles and Ted Suhl, that he was instructed to stay silent, and they did not do anything in response aside from call the residents "liars" and "homosexuals." (JD4 Dep. 129:12–131:20, 137:18–24, 141:6–146:18, 157:1–15, 268:13–270:15, Ex. 28). John Doe 2 testified that he reported sexual abuse by Presley occurring in Presley's car to senior management in or around the summer of 1992, including Ted Suhl, Bud Suhl, Shirley Suhl, Alonzo Jiles, and others—and they told him to stay silent and did not restrict Presley's access to children. (JD2 Dep. 70:19–71:14, 155:15–163:6, Ex. 29). Plaintiff Michael Robinson testified that he reported sexual abuse by Presley occurring in Presley's car to staff in 1999 (Robinson Dep. 120:23-121:22, 133:10-143:1, Ex. 30).

These allegations and testimony are sufficient, at this stage, to establish a prima facie basis for punitive damages and to permit discovery relevant to punitive damages. Arkansas law permits punitive damages where a defendant knew or ought to have known that its conduct would naturally and probably result in injury and continued that conduct with malice or reckless disregard of the consequences. Ark. Code Ann. § 16-55-206; *see also Brumley v. Keech*, 2012 Ark. 263, 3; *Yeakley v. Doss*, 370 Ark. 122, 128 (2007); *see also Truong Son Mkt., Inc. v. State Auto Prop. & Cas. Ins.*, 2022 WL 1538582 (W.D. Ark. May 16, 2022) ("It is well-established that under federal law, evidence of the defendants' financial worth is relevant to a claim for punitive damages").

Plaintiffs have alleged that the Suhl Defendants and the other Lord's Ranch Defendants knowingly disregarded reports of sexual abuse, failed to report or stop abuse, permitted Presley to maintain access to children, and used threats, intimidation, and violence to silence victims. TAC ¶¶ 158–180. Those allegations, along with the sworn testimony, are sufficient at this stage to establish a prima facie basis for punitive damages and to permit discovery relevant to punitive damages. *See Wortman v. Shipman*, 737 S.W.2d 438, 439 (Ark. 1987) (holding party made prima facie case for punitive damages based on affidavit and answers to written discovery); *Jansen v. Wekerle*, 2015 WL 2152678, at *3 (E.D. Ark. May 6, 2015); *Clark v. Baka*, 2008 WL 4531708, at *5 (E.D. Ark. Oct. 9, 2008) (determining whether financial discovery is permissible on allegations of complaint); *see also Henderson v. City of North Little Rock,* 2008 WL 11342617, *5 (E.D. Ark. May 28, 2008) (granting financial discovery under Rule 26 despite defendants' argument that plaintiff had not first established a prima facie case for punitive damages); *E.E.O.C. v. Tobacco*

*Superstores, Inc.*, 2008 WL 2705565, at *2 (E.D. Ark. July 9, 2008) (same; compelling financial records for punitive damages discovery and distinguishing discoverability from later admissibility upon a prima facie showing).

In this case, information pertaining to *any* defendant's financial condition is discoverable because (a) Plaintiffs have brought claims for punitive damages, alter-ego liability, veil piercing, and joint venture liability, and (b) Defendant The Lord's Ranch has raised charitable immunity as a defense. *See* TAC ¶¶ 475-477, 440-468; Ans. to TAC ¶ 493; *Anderson v. Stewart,* 234 S.W.3d 295, 297-301 (Ark. 2006) (discussing factors relevant to issue of veil piercing, including bank account records, tax records, and other financial data); *Slaton v. Jones,* 195 S.W.3d 392, 397-398 (Ark. App. 2004) (discussing factors to be considered on the issue of whether a joint venture exists, including how profits and losses are shared among the parties); *Masterson v. Stambuck*, 902 S.W.2d 803, 809-810 (Ark. 1995) (establishing factors, including compensation of high-level employees and whether the entity earns a profit, to be considered in determining a defendant's charitable status for purposes of the defense of charitable immunity).

The Suhl Defendants' reliance on *Life & Casualty Insurance Co. v. Padgett*, 407 S.W.2d 728, 730 (Ark. 1966), does not bar discovery. *Padgett* concerns the admissibility of financial evidence *at trial* when punitive damages are sought against multiple defendants. It does *not* hold that financial information is not discoverable under Rule 26. *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 653 S.W.2d 128, 137 (Ark. 1983), confirms that the *Padgett* rule is not absolute even as to admissibility: where punitive damages are sought against one defendant based on conduct "different from, and greater than" that

of other defendants, financial-condition evidence may be admitted with an appropriate limiting instruction. Thus, at most, *Padgett* raises a later evidentiary issue. It does not justify withholding discovery now. *See Henderson,* 2008 WL 11342617, *5 (holding plaintiff is entitled to defendants' financial information regardless of whether plaintiff is claiming punitive damages from multiple defendants). This is particularly so where the requested financial information is relevant not only to punitive damages, but also to Plaintiffs' alter-ego, single-entity, joint venture, and veil-piercing theories, and to Defendants' potential charitable immunity defenses.

The Suhl Defendants and corporate Defendants each assert charitable immunity as an affirmative defense on behalf of "Separate Defendant the Lord's Ranch." Ans. to TAC ¶ 493. There is no party to this suit called simply "the Lord's Ranch" because there exists no legal entity by that name. What does exist are these 18 named corporate defendants created, owned, and operated by the Suhl family, most of which are located at 1033 Old Burr Rd., Warm Springs, AR 72478, the same address as the "Lord's Ranch." Ted Suhl and Shirley Suhl each admit to being officers of "multiple Lord's Ranch Defendants." Ans. to TAC ¶¶ 448-450. But what is the Lord's Ranch, this ill-defined thing claiming charitable immunity? Is it the Suhls? Is it a family proprietorship? Is it these 18 corporate defendants? Is it some combination thereof? That question cannot be answered, and the named defendants cannot be whittled down, without financial discovery. Shirley Suhl has testified that all corporate documents have been destroyed, which makes the requested financial discovery all the more necessary: Defendants should not be permitted

to rely on the absence of corporate records while asking Plaintiffs and the Court to accept, on faith, that certain corporate entities had no involvement with The Lord's Ranch.

Third-party witness Steve Candelario's testimony also supports Plaintiffs' request. Candelario testified that, when he was interviewed for a job and spent approximately one week at The Lord's Ranch in the early 1990s, he understood that the Ranch set up Cayman Islands accounts on behalf of its employees to compensate them for their work. Candelario Dep. 86:21–87:15, 90:3–23, Ex. 31.

Any issues of admissibility are for another day. Further, since Plaintiffs are agreeable to entry of a protective order, Ex. 32 (good faith letter), any concerns related to public disclosure of the financial information can be adequately safeguarded. *See Rivercliff Co. v. Residences at Riverdale GP, LLC*, 2011 WL 6013849, at *9–10 (E.D. Ark. Dec. 2, 2011).

Additionally, with respect to Requests for Production Nos. 16 and 17, the Suhl Defendants waived their objections by agreeing to supplement and produce responsive documents "as necessary," leaving Plaintiffs no way of knowing if documents are being withheld or the nature of those documents. *See Cumberland v. Church Mut. Ins. Co.*, 2023 WL 8724064, at *4 (E.D. Ark. Dec. 18, 2023); *Taylor-Shaw v. Bestway Rent-To-Own*, 2010 WL 2998796, at *3 (E.D. Ark. July 28, 2010); *Jones v. Forrest City Grocery, Inc.*, 2007 WL 841676, at *1 (E.D. Ark. Mar. 16, 2007).

Plaintiffs respectfully request that the Court overrule Defendants' objections to financial-condition discovery and order Shirley Suhl, Ted Suhl, and each corporate Lord's Ranch Defendant to serve complete, verified, and unqualified amended responses and produce all responsive documents within twenty-eight days.

**The Suhl Defendants' Position**

As to the first disagreement, the disclosure of financial condition, the Suhl Defendants respectfully stand on their objections. First, Plaintiffs cannot yet inquire as to the Defendants' financial standing because they have not yet made a prima facie showing that Plaintiffs are entitled to punitive damages from Defendants (particularly so in the case of the Suhl Defendants). In *Lodging Dev. & Mgmt., Inc. v. Days Inn Worldwide, Inc.*, No. 3:00CV218 HW, 2001 WL 35756572, at *4 (E.D. Ark. Oct. 18, 2001), this Court noted that Arkansas law requires a plaintiff to make a prima facie case for punitive damages before disclosure of financial status is required. There, the defendant was not required to respond to interrogatories relating to its financial worth until *after* it moved for summary judgment on the issue of punitive damages, "thus providing the vehicle for plaintiff to make its prima facie case by way of its response." *Id.*

Similarly, in *Jansen v. Wekerle*, No. 4:13-cv-00606-JLH, 2015 WL 2152678, *3 (2015) (E.D. Ark. May 6, 2015), this Court again applied the Arkansas rule that a "plaintiff must present a prima facie case of entitlement to punitive damages *before being entitled to obtain the defendant's financial records*" (emphasis added) where the defendant "refused to provide the financial information, arguing that [plaintiff] has not made a prima facie case of entitlement to punitive damages." Likewise, in *Clark v. Baka*, No. 4:07-cv-00477-GTE, 2008 WL 4531708, *4-5 (E.D. Ark. Oct. 9, 2008), the Court noted that "in the past, this Court has, more often than not, not required such financial information to be produced during discovery." *Id.* The Court concluded that, in the absence of allegations "sufficient to indicate a basis for a punitive damages claim against [defendant]," the defendant "should

9

not be required to produce financial information during discovery." *Id.* Nor is this District alone in applying the prima facie requirement. *See, e.g.*, *Timber Automation, LLC v. FiberPro, LLC*, No. 6:20-cv-06076, 2020 WL 12788510 (W.D. Ark. Dec. 15, 2020) (denying in relevant part a motion to compel answers about personal finances in absence of prima facie showing). These cases represent a logical, just, and correct application of *Curtis v. Partain*, 272 Ark. 400, 614 S.W.2d 671 (1981), *rev'd on other grounds*, *Lupo v. Lineberger*, 313 Ark. 315, 855 S.W.2d 293 (1993) (holding evidence would have to be produced establishing complaint allegations before ordering disclosure of financial statement).

Defendants anticipate that Plaintiffs will rely on *Henderson v. Little Rock*, No. 4:07-cv-00874-SWW, 2008 WL 11342617, *4-5 (E.D. Ark. May 28, 2008). It is true that the Court in *Henderson* concluded that the plaintiffs there could obtain discovery of the defendants' financial status. Significantly, however, the court's ruling in *Henderson* hinges on a presumption that Arkansas's prima facie requirement is procedural, not substantive. It relies primarily on old, out-of-district cases from North and South Dakota to decide that discovery should proceed on that subject. But that case is decidedly in the minority of cases in this District as previously discussed, and this Court should side with the majority of cases here in concluding that Arkansas's prima facie requirement is a *substantive* rule, and a prima facie showing is required even in federal proceedings. "Federal courts sitting in diversity apply state substantive law," and punitive damages are a matter of substantive state law. *Morgantown Machine & Hydraulics of Ohio, Inc. v. American Piping Prods., Inc.*, 887 F.3d 413, 415 (8th Cir. 2018); *Erie R.R.Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Molzof v. U.S.*, 502 U.S. 301, 306 (1992) ("'Punitive damages' is a legal term of art

10

that has a widely accepted common-law meaning; '[p]unitive damages have long been a part of traditional state tort law.'"); *see also In re Aircraft Accident at Little Rock, Ark., June 1, 1999*, 231 F.Supp.2d 852, 876-878 (E.D. Ark. 2002) (federal court interpreting and applying Arkansas substantive punitive damages laws and their requirements to the facts when seated in diversity jurisdiction). That Arkansas's requirement of a prima facie showing is a substantive and not procedural is further evident by examining how Arkansas state courts address the issue: a separate hearing specifically on the sufficiency of the showing. *See, e.g.*, *Wortman v. Shipman*, 293 Ark. 253, 737 S.W.2d 438 (1987) ("the trial judge here did conduct a hearing after appellant's motion and two weeks prior to trial"). Courts in this District have not adopted that *procedural* hurdle, but comfortably have applied the *substantive* requirement within the framework of the Federal Rules.

This Court should do likewise. Plaintiffs attempt to circumvent the substantive Arkansas requirement that they make a prima facie showing of entitlement to punitive damages before getting discovery on that subject. As to the Suhl and Corporate Defendants, Plaintiffs have not done so — and cannot do so. The discovery at issue is a cynical attempt to determine whether it is "worth it" to Plaintiffs to proceed against the Suhl and Corporate Defendants for a long-shot punitive damages claim (and not, of note, a surer claim against actual perpetrator of the conduct). Indeed, of significance here, Plaintiffs' push for financial discovery began only after they learned there likely is no insurance coverage.

To the extent Plaintiffs attempt a collateral argument — that the discovery is relevant to veil-piercing, joint venture, and charitable immunity — the record suggests

11

otherwise. The Suhl Defendants' current financial holdings have no relevance to whether they were an alter ego or in a joint venture with an entity that stopped doing business decades ago or whether any such entity has charitable immunity. The Suhl Defendants both already indicated that they have no responsive documents as to compensation from The Lord's Ranch (Request No. 16). In the context of this discovery dispute, the statement that there are no responsive records known to be in their possession/custody/control ends the discussion—and ends the veil-piercing/joint venture/immunity inquiry, and further discovery into the Suhl Defendants' ~~present-day~~ bank statements, tax returns, holdings, etc. plainly is irrelevant. If these issues truly are the target of Plaintiffs' discovery, Plaintiffs should have sought other less invasive methods to provide information relevant to piercing the corporate veil and joint venture. Their failure to do so further implies that there is nothing to be had and belies Plaintiffs' assertion that they are seeking discovery into the Suhl Defendants' finances relative to veil-piercing, joint venture, and charitable immunity.

Additionally and alternatively, Defendants again iterate their objection that discovery cannot be had on their financial condition because when a plaintiff sues two or more defendants for punitive damages, as Plaintiffs do here, he "waives his right to prove the financial condition of any one of them." *Life & Casualty Ins. Co. v. Padgett*, 241 Ark. 353, 356-357; 407 S.W.2d 728, 730 (1966). This rule originates in *Washington Gas-Light Co. v. Lansden*, 172 U.S. 534, 19 S. Ct. 296, 43 L. Ed. 543 (1898). There, the Supreme Court stated, "[a]s the verdict must be for one sum against all defendants who are guilty, it seems to be plain that, when a plaintiff voluntarily joins several parties as defendants, he

must be held to thereby waive any right to recover punitive damages against all, founded upon evidence of the ability of one of the several defendants to pay them." *Id.*, 172 U.S. at 553. This rule should be applied to bar discovery of financial status prior to a finding of liability; it also is a reason why Plaintiffs cannot make a prima facie.

As to the second disagreement, the Suhl Defendants have not waived their objections. Rule 34(b)(2)(C) of the Federal Rules of Civil Procedure provides: "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Plaintiffs now seek to punish the Suhl Defendants for their compliance with these requirements. Rule 34 is not intended to be a trap—the Court should not allow Plaintiffs to make it one. The Suhl Defendants offered a partial objection and explained to Plaintiffs whether documents were being withheld.  As explained above, the Suhl Defendants stand on their objections with respect to Plaintiffs' failure to make the requisite prima facie showing. If that issue is resolved upon such a showing, then the objection admittedly is moot and the Suhl Defendants' commitment to respond "as necessary, as discovery in this matter continues." *See Robert-Leslie Publishing, LLC. V. MacMillan Publishing Group*, 3:23-cv-00177-BSM (E.D. Ark. Sep. 24, 2025) (a conditional objection and response still comply with Rule 34(b)(2)(C) where the response "revealed the single parameter that controlled the search for responsive documents (privilege) and stated that 'all' non-privileged documents would be produced."). By scrupulously following Rule 34, the Defendants have not waived their objections.

13

## The Corporate Defendants' Position

The Corporate Defendants incorporate the facts and arguments set forth in the Suhl Defendants' Position statement as if fully restated here.

Dated: June 16, 2026

Respectfully submitted,

**GILLISPIE LAW FIRM**
1 Riverfront Place, Suite 605
North Little Rock, AR 72114
Phone:  (501) 244-0700
Fax:  (501) 244-2020
josh@gillispielawfirm.com

By: /s/ *Joshua D. Gillispie*___
    Joshua D. Gillispie

*Counsel for Plaintiffs*
*John Does 1, 2, Michael Robinson, 4, 5, 6,*
*Maurice Collins, 8; 9-12, Nathan Harmon,*
*14-16; & 19-30*

**BEQUETTE, BILLINGSLEY**
**& KEES, P.A.**
425 W. Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
jbequette@bbpalaw.com
pbrick@bbpalaw.com

By: /s/ *Phillip M. Brick*____
    Jay Bequette
    Phillip M. Brick

*Counsel for Defendants Emmett A. Presley,*
*Alonza Jiles and Tyree Davis*

**ROMANUCCI & BLANDIN, LLC.**
321 N. Clark Street, Suite 900
Chicago, IL 60654
Phone: (312) 253-8790
Fax: (312) 458-1004
phuber@rblaw.net

By: /s/ *Patrick Huber*_____
    Patrick Huber *Pro Hac Vice*

*Counsel for Plaintiffs*
*John Does 1, 2, Michael Robinson, 4, 5, 6,*
*Maurice Collins, 8; 9-12, Nathan Harmon,*
*14-16; & 19-30*

**ROETZEL & ANDRESS, LPA**
30 N. LaSalle Street, Suite 2800
Chicago, IL  60602
Phone: 312.580.1200
mscotti@ralaw.com

By: /s/ *Michael J. Scotti*_____
    Michael J. Scotti, III
    *Pro Hac Vice*

- AND –

**MITCHELL, WILLIAMS, SELIG,**
**GATES & WOODYARD, P.L.L.C.**
4206 South J.B. Hunt Drive, Suite 200
Rogers, Arkansas 72758
Direct: (479) 464-5670
Facsimile: (479) 464-5680
smiller@mwlaw.com
jalexander@mwlaw.com

By: _____
    Stuart P. Miller
    John E. Alexander
    *Counsel for Lord's Ranch Defendants*

15

**GOULD GRIECO
& HENSLEY, PLLC**

Martin D. Gould (P*ro Hac Vice*)
Nicholas P. Wainwright (*Pro Hac Vice*)
Valerie A. Letko (P*ro Hac Vice*)
101 N. Wacker Dr., Ste. 100
T:  (313) 895-7227
F:  (313) 221-9550
Martin@gghlaw.com
Nicholas@gghlaw.com
Valerie@gghlaw.com

By: /s/ *Martin D. Gould*____
      Martin D. Gould

*Counsel for Plaintiffs Maurice Collins, John
Does 8; 12; 103, 105, 107, 108-113; and Jane
Does 103 and 109*

**ETOCH LAW FIRM**

Robert Lewis
221 West 2nd Street, Ste. 312
Little Rock, AR 72201
Phone: (501) 333-9400
Fax: (501) 232-3777
robert@etochlaw.com

*Counsel for Plaintiffs John Does 108-113, and
Jane Does 109*

**PAUL BYRD LAW FIRM, PLLC**

415 N. McKinley St., Suite 210
Little Rock, AR 72205
Phone: (501) 420-3050
Fax: (501) 420-3128
Paul@paulbyrdlawfirm.com

By: /s/ *Paul Byrd*_____
      Paul Byrd

*Counsel for Plaintiffs
John Does 107-113, 120-123; and
Jane Does 109, 120, 121*

**ONDER LAW, LLC**

Kayla R. Onder *Pro Hac Vice*
James G. Onder (*Pro Hac Vice* application
forthcoming)
Cynthia L. Garber (*Pro Hac Vice*
application forthcoming)
ONDER LAW, LLC
110 East Lockwood
St. Louis, MO 63119
Tel: (314) 963-9000
Fax: (314) 227-7665
onder@onderlaw.com
garber@onderlaw.com
konder@onderlaw.com

*Counsel for Plaintiffs
John Does 103 and 105 and
Jane Doe 103*

16